# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-1177

_____

Sheila Foster, on behalf of herself and all others similarly situated

*Plaintiff - Appellant*

v.

State of Minnesota, et al.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: December 13, 2017
Filed: April 20, 2018

_____

Before WOLLMAN, LOKEN, and MELLOY, Circuit Judges.

_____

LOKEN, Circuit Judge.

In 1998, the State of Minnesota, through its Attorney General, entered into a court-approved Settlement Agreement in which the State "release[d] and forever discharge[d]" tobacco companies from claims that they violated Minnesota consumer protection statutes in exchange for substantial periodic settlement payments. In 2001, Gregory Curtis filed a class action alleging that one of the companies had violated several Minnesota consumer protection statutes by marketing "light" cigarettes as a

safer alternative to regular cigarettes. The Supreme Court of Minnesota eventually dismissed the complaint, concluding (i) that the Attorney General was authorized to sue the tobacco companies under Minn. Stat. § 8.31, subd. 3a, and to settle consumer protection claims asserted by the State, acting as representative of Minnesota citizens; and (ii) that the 1998 Settlement Agreement's "broad and comprehensive" release "expressly released and barred [the class members'] consumer protection claims." Curtis v. Altria Grp., Inc., 813 N.W.2d 891, 900, 902-04 (Minn. 2012).

In 2014, Kristen Harne and Sheila Foster filed a class action in Minnesota district court against the State of Minnesota, the Attorney General, and the Commissioner of Management and Budget (acting in their official capacities). Count I alleged that defendants' failure to pay class members a portion of the proceeds of the 1998 Settlement Agreement constituted an "inverse condemnation" in violation of Article I, § 13, of the Minnesota Constitution. Count II alleged that the same conduct constituted a taking of private property without just compensation in violation of the Fifth Amendment of the United States Constitution. Both Counts sought just compensation relief. The Minnesota trial court dismissed the action, concluding that both claims were time-barred under the applicable Minnesota six-year statute of limitations, Minn. Stat. § 541.05, and that no taking had occurred. The Minnesota Court of Appeals affirmed, concluding both claims were time-barred by § 541.05. Harne v. State, No. A14-1985, 2015 WL 4523895, at *1 (Minn. App. June 29, 2015). The Supreme Court of Minnesota denied review.

In 2016, Foster filed this federal class action complaint against the Harne defendants under 42 U.S.C. § 1983, asserting that the State's failure to share annual payments under the Settlement Agreement constitutes a taking in violation of the Fifth Amendment. The district court[1] granted Defendants' motion to dismiss,

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

concluding that Foster's Fifth Amendment claim is barred by res judicata because the same claim was raised and rejected in Harne. Alternatively, the court ruled that this federal claim is time-barred under Minnesota law. Foster appeals. Reviewing the grant of a Rule 12(b)(6) motion *de novo*, we agree with the district court that the Fifth Amendment claim is barred by res judicata and therefore affirm. See Laase v. Cty. of Isanti, 638 F.3d 853, 856 (8th Cir. 2011) (standard of review).[2]

"Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." Edwards v. City of Jonesboro, 645 F.3d 1014, 1019 (8th Cir. 2011) (quotation omitted). "[T]he law of the forum that rendered the first judgment controls the res judicata analysis." Laase, 638 F.3d at 856 (quotation omitted). In Minnesota, res judicata bars a subsequent claim when: "(1) the earlier claim involved the same claim for relief; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; and (4) the estopped party had a full and fair opportunity to litigate the matter." State v. Joseph, 636 N.W.2d 322, 327 (Minn. 2001).

Here, all four elements are satisfied. First, Foster's takings claim in federal court is identical to the federal takings claim asserted in Harne -- that the State by entering into a Settlement Agreement in which it released Foster's claims under Minnesota consumer protection statutes while refusing to share the monetary proceeds of that settlement violated the Fifth Amendment by taking private property without just compensation. Second, Harne involved the same parties defendant. Third, under Minnesota law, the dismissal of the claims in Harne as time-barred was a final judgment on the merits. See Sautter v. Interstate Power Co., 567 N.W.2d 755,

---

[2]As this issue resolves the appeal, we need not address the district court's alternative ruling that Foster's claim is time-barred, nor Defendants' contention that the claim is precluded by their Eleventh Amendment immunity. See Friends of Lake View Sch. Dist. Incorp. No. 25 v. Beebe, 578 F.3d 753, 763 n.14 (8th Cir. 2009).

759 (Minn. App. 1997); see generally Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 504 (2001). Fourth, Foster and Harne actually litigated their federal claims in Harne.

Foster argues that applying res judicata to bar her federal claim based on the prior Harne litigation violates the rule that "[c]laims are not considered the same cause of action if the right to assert the second claim did not arise at the same time as the right to assert the first claim." Mach v. Wells Concrete Prods. Co., 866 N.W.2d 921, 925 (Minn. 2015) (quotation omitted). We disagree. Foster argues her Fifth Amendment claim did not arise until she was denied just compensation in Harne because "a property owner has not suffered a violation of the [Fifth Amendment's] Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State for obtaining such compensation." Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 195 (1985); see Dakota, Minn. & E. R.R. v. South Dakota, 362 F.3d 512, 520 (8th Cir. 2004). However, the alleged taking occurred when the State entered into the Settlement Agreement in 1998. The state law inverse condemnation claim arose at that time, and Williamson County did not preclude Foster from also challenging the constitutionality of that taking under the Fifth Amendment in state court. As the Supreme Court explained in San Remo Hotel, L.P. v. City of San Francisco, 545 U.S. 323, 346 (2005):

> The requirement that aggrieved property owners must seek compensation through the procedures the State has provided for doing so does not preclude state courts from hearing simultaneously a plaintiff's request for compensation under state law and the claim that, in the alternative, the denial of compensation would violate the Fifth Amendment of the Federal Constitution.

-4-

When a property owner has unsuccessfully asserted a Fifth Amendment takings claim in state court, as Foster did in the Harne litigation, her later assertion of the same claim in federal court is precluded under Minnesota law. See Edwards, 645 F.3d at 1020; Knutson v. City of Fargo, 600 F.3d 992, 997-98 (8th Cir.), cert. denied, 562 U.S. 897 (2010); Torromeo v. Town of Fremont, N.H., 438 F.3d 113, 116-17 (1st Cir.), cert. denied, 549 U.S. 886 (2006). Foster's reliance on R & J Holding Co. v. Redev. Auth. of Montgomery, 670 F.3d 420 (3d Cir. 2011), cert. denied, 567 U.S. 924 (2012), is misplaced. There, applying claim-splitting principles of Pennsylvania preclusion law, the court held that a prior state court judgment rejecting plaintiffs' state law inverse condemnation claim did not preclude a Fifth Amendment claim in federal court because plaintiffs expressed their intent to preserve the federal claims in the state litigation, and defendants failed to object. Id. at 426-28. Here, by contrast, Foster expressly pleaded and litigated her Fifth Amendment claim in the state court in Harne.

Foster further argues that she lacked full and fair opportunity to litigate her federal takings claim because the Minnesota Court of Appeals dismissed the claim as untimely under what Foster argues was an inapplicable state statute-of-limitations. There can be no doubt that Foster's Fifth Amendment claim was subject to the same six-year statute of limitations as her inverse condemnation claim under the Minnesota Constitution. See, e.g., Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 618 (8th Cir. 1995). The Minnesota Court of Appeals expressly dismissed both claims on the merits as time-barred. If Foster believed the Minnesota appellate courts committed an error of federal law, her remedy was to petition the Supreme Court of the United States for a writ of certiorari. See San Remo, 545 U.S. at 347 ("most of the cases in our takings jurisprudence . . . came to us on writs of certiorari from state courts of last resort"). Foster cites no "significant procedural limitations" in the prior proceeding that denied a full and fair opportunity to litigate the federal takings claim she asserted. Joseph, 636 N.W.2d at 328. "[A] litigant's disagreement with a legal ruling does not

necessarily mean that the court denied the litigant a full and fair opportunity to litigate a matter." Id. at 329.

Finally, invoking the principle that res judicata is a flexible doctrine that should not be applied to "work an injustice," Hauschildt v. Beckingham, 686 N.W.2d 829, 837 (Minn. 2004), Foster argues that applying claim preclusion here works an injustice because it would "effectively strip federal courts of jurisdiction over claims involving the U.S. Constitution's Takings Clause." We reject the contention that litigating a federal takings claim that is based on state government action in state court works an injustice. As the Supreme Court observed in San Remo, "[i]t is hardly a radical notion to recognize that, as a practical matter, a significant number of plaintiffs will necessarily litigate their federal takings claims in state courts." 545 U.S. at 346.

The judgment of the district court is affirmed.

_____